IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SHANNON MEDICAL CENTER**
120 EAST HARRIS AVENUE
SAN ANGELO, TX  76903

**D C H REGIONAL MEDICAL CENTER**
809 UNIVERSITY BOULEVARD EAST
TUSCALOOSA, AL  35401

**SONOMA VALLEY HOSPITAL**
347 ANDRIEUX ST
SONOMA, CA 95476

**LAFAYETTE GENERAL MEDICAL CENTER**
1214 COOLIDGE AVENUE
LAFAYETTE, LA 70503

**BATON ROUGE GENERAL MEDICAL CENTER**
3600 FLORIDA STREET
BATON ROUGE, LA 70806

**LIMA MEMORIAL HEALTH SYSTEM**
1001 BELLEFONTAINE AVENUE
LIMA, OH  45804

**METROHEALTH MEDICAL CENTER**
2500 METROHEALTH DRIVE
CLEVELAND, OH  44109

**NORTH OAKS MEDICAL CENTER, LLC**
15790 PAUL VEGA MD DRIVE
HAMMOND, LA  70403

**WILLIS KNIGHTON MEDICAL CENTER**
2600 GREENWOOD ROAD
SHREVEPORT, LA  71103

**WILLIS KNIGHTON BOSSIER HEALTH CENTER**
2400 HOSPITAL DR
BOSSIER CITY, LA  71111

Case No.:

**CHARLES AND VIRGINIA HICKMAN HOSPITAL**
818 RIVERSIDE AVENUE
ADRIAN, MI  49221

**FLOWER HOSPITAL**
5200 HARROUN ROAD
SYLVANIA, OH  43560

**BAY PARK COMMUNITY HOSPITAL**
2801 BAY PARK DRIVE
OREGON, OH  43616

**THE QUEEN'S MEDICAL CENTER**
1301 PUNCHBOWL ST
HONOLULU, HI  96813

**TEXAS HEALTH HARRIS METHODIST FORT WORTH**
1301 PENNSYLVANIA AVENUE
FORT WORTH, TX  76104

**TEXAS HEALTH PRESBYTERIAN HOSPITAL DALLAS**
8200 WALNUT HILL LANE
DALLAS, TX  75231

**TEXAS HEALTH HARRIS METHODIST HURST-EULESS-BEDFORD**
1600 HOSPITAL PARKWAY
BEDFORD, TX  76022

**TEXAS HEALTH HARRIS METHODIST HOSPITAL SOUTHWEST**
6100 HARRIS PKWY
FORT WORTH, TX 76132

**TEXAS HEALTH ARLINGTON MEMORIAL HOSPITAL**
800 W RANDOL MILL RD
ARLINGTON, TX 76012

**TEXAS HEALTH HARRIS METHODIST HOSPITAL CLEBURNE**

201 WALLS DRIVE
CLEBURNE, TX  76033

**TEXAS HEALTH PRESBYTERIAN HOSPITAL PLANO**
6200 W PARKER RD
PLANO, TX  75093

**TEXAS HEALTH PRESBYTERIAN HOSPITAL ALLEN**
1105 CENTRAL EXPRESSWAY NORTH
ALLEN, TX 75013

**TEXAS HEALTH PRESBYTERIAN HOSPITAL KAUFMAN**
850 ED HALL
KAUFMAN, TX  75142

**TEXAS HEALTH HARRIS METHODIST HOSPITAL STEPHENVILLE**
411 N BELKNAP ST
STEPHENVILLE, TX  76401

**WEST ANAHEIM  MEDICAL CENTER**
3033 W ORANGE AVENUE
ANAHEIM, CA  92804

**CHINO VALLEY MEDICAL CENTER**
5451 WALNUT AVE
CHINO, CA  91710

**HUNTINGTON BEACH HOSPITAL**
17772 BEACH BLVD
HUNTINGTON BEACH, CA 92647

**LA PALMA INTERCOMMUNITY HOSPITAL**
7901 WALKER STREET
LA PALMA, CA 90623

**MONTCLAIR HOSPITAL MEDICAL CENTER**
5000 SAN BERNARDINO ST
MONTCLAIR, CA  91763

**ENCINO HOSPITAL MEDICAL CENTER**
16237 VENTURA BLVD

ENCINO, CA 91436

**GARDEN GROVE HOSPITAL & MEDICAL CENTER**
12601 GARDEN GROVE BLVD
GARDEN GROVE, CA 92843

**SAN DIMAS COMMUNITY HOSPITAL**
1350 W COVINA BLVD
SAN DIMAS, CA  91773

**CENTINELA HOSPITAL MEDICAL CENTER**
555 EAST HARDY STREET
INGLEWOOD, CA

**ALVARADO HOSPITAL MEDICAL CENTER**
6655 ALVARADO ROAD
SAN DIEGO, CA  92120

**SAINT MICHAEL'S MEDICAL CENTER, INC**
111 CENTRAL AVENUE
NEWARK, NJ  07102

**LANDMARK MEDICAL CENTER**
115 CASS AVE
WOONSOCKET, RI  02895

**HARLINGEN MEDICAL CENTER**
5501 SOUTH EXPRESSWAY 77
HARLINGTON. TX 78550

**PARADISE VALLEY HOSPITAL**
2400 EAST 4TH ST
NATIONAL CITY, CA  91950

**DESERT VALLEY HOSPITAL**
16850 BEAR VALLEY RD
VICTORVILLE, CA 92395

**SHERMAN OAKS HOSPITAL**
4929 VAN NUYS BLVD
SHERMAN OAKS, CA  91403

**SHASTA REGIONAL MEDICAL CENTER**

1100 BUTTE ST
REDDING, CA  96001

**GARDEN CITY HOSPITAL**
6245 INKSTER RD
GARDEN CITY, MI  48135

**SUBURBAN COMMUNITY HOSPITAL**
2701 DEKALB PIKE
NORRISTOWN, PA  19401

**DALLAS MEDICAL CENTER**
7 MEDICAL PARKWAY
DALLAS, TX  75234

**KNAPP MEDICAL CENTER**
1401 EAST EIGHT STREET
WESLACO, TX  78596

**SAINT MARY'S REGIONAL MEDICAL CENTER**
235 W 6TH ST
RENO, NV  89503

**ROXBOROUGH MEMORIAL HOSPITAL**
5800 RIDGE AVE
PHILADELPHIA, PA 19128

**PAMPA REGIONAL MEDICAL CENTER**
1 MEDICAL PLAZA
PAMPA, TX  79065

**UH REGIONAL HOSPITALS**
27100 CHARDON ROAD
RICHMOND HEIGHTS, OH  44143

**UH CLEVELAND MEDICAL CENTER**
11100 EUCLID AVENUE
CLEVELAND, OH  44106

**UH PORTAGE MEDICAL CENTER**
6847 N CHESTNUT
RAVENNA, OH  44266

**UH ELYRIA MEDICAL CENTER**

630 EAST RIVER STREET
ELYRIA, OH  44035

**UH BEDFORD MEDICAL CENTER**
44 BLAINE AVENUE
BEDFORD, OH  44146

**UH GEAUGA MEDICAL CENTER**
13207 RAVENNA RD
CHARDON, OH  44024

**SAINT JOHN HOSPITAL**
3500 SOUTH 4TH STREET
LEAVENWORTH, KS 66048

**PROVIDENCE MEDICAL CENTER**
8929 PARALLEL PARKWAY
KANSAS CITY, KS  66112

**LOWER BUCKS HOSPITAL**
501 BATH ROAD
BRISTOL, PA  19007

**AKRON GENERAL MEDICAL CENTER**
400 WABASH AVENUE
AKRON, OH  44307

**MERCY MEDICAL CENTER**
1320 MERCY DRIVE NW
CANTON, OH  44708

**FAIRVIEW HOSPITAL**
18101 LORAIN AVENUE
CLEVELAND, OH 44111

**EUCLID HOSPITAL**
18901 LAKE SHORE BOULEVARD
EUCLID, OH  44119

**SOUTH POINTE HOSPITAL**
20000 HARVARD ROAD
WARRENSVILLE, OH  44122

**CLEVELAND CLINIC**
9500 EUCLID AVENUE
CLEVELAND, OH  44195

**LAKEWOOD HOSPITAL**
14519 DETROIT AVENUE
LAKEWOOD, OH 44107

**LUTHERAN HOSPITAL**
1730 WEST 25TH STREET
CLEVELAND, OH  44113

**HURON HOSPITAL**
13951 TERRACE ROAD
EAST CLEVELAND, OH  44112

**OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER**
5000 HENNESSY BLVD
BATON ROUGE, LA  70808

**OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC**
4801 AMBASSADOR CAFFERY PARKWAY
LAFAYETTE, LA  70508

**ST FRANCIS MEDICAL CENTER**
309 JACKSON STREET
MONROE, LA  71201

**OUR LADY OF THE LAKE ASCENSION COMMUNITY HOSPITAL – ST. ELIZABETH HOSPITAL**
1125 WEST HIGHWAY 30
GONZALES, LA  70737

**MERCY MEDICAL CENTER**
2710 SOUTH RIFE MEDICAL LANE
ROGERS, AR  72758

**ST. JOSEPH'S MERCY MEDICAL CENTER**
300 WERNER STREET
HOT SPRINGS, AR  71913

**MERCY HOSPITAL FORT SMITH**
7301 ROGERS AVENUE
FORT SMITH, AR  72903

**MERCY HOSPITAL WASHINGTON**
901 EAST FIFTH STREET
WASHINGTON, MO  63090

**MERCY HOSPITAL LEBANON**
100 HOSPITAL DRIVE
LEBANON, MO  65536

**MERCY HOSPITAL SPRINGFIELD**
235 EAST CHEROKEE STREET
SPRINGFIELD, MO  65804

**MERCY HOSPITAL EL RENO**
2115 PARKVIEW DRIVE
EL RENO, OK  73036

**MERCY HEALTH CENTER**
4300 WEST MEMORIAL ROAD
OKLAHOMA CITY, OPK 73120

**MERCY MEMORIAL MEDICAL CENTER**
1011 14TH AVENUE NORTHWEST
ADMORE, OK  73401

**SKAGIT VALLEY HOSPITAL**
300 HOSPITAL PARKWAY
MT. VERONON, WAS 98274

Plaintiffs,

v.

**XAVIER BECERRA**, Secretary, United States
Department of Health and Human Services
200 INDEPENDENCE AVENUE, S.W.
WASHINGTON, D,C  20201

Defendant.

## COMPLAINT FOR JUDICIAL REVIEW OF A FINAL ADVERSE AGENCY DECISION

## ON MEDICARE REIMBURSEMENT

The above-captioned Plaintiff hospitals ("Plaintiffs" or "Hospitals"), by and through their undersigned attorneys, bring this action against defendant Xavier Becerra, in his official capacity as the Secretary (the Secretary) of the Department of Health and Human Services (HHS), and state as follows:

## **INTRODUCTION**

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the "Medicare Act"), the Administrative Procedure Act, 5 U.S.C. §§551 *et seq.* (the "APA"), and other authorities.  The Medicare payment issue in this action is how inpatient hospital days should be counted for purposes of calculating the Hospitals' Medicare disproportionate share hospital (DSH) payments for a range of fiscal years ("FY") as more fully set forth, below.

2.  This civil action is brought to obtain judicial review of two final decisions issued by the Provider Reimbursement Review Board (hereafter, the "PRRB", or the "Board"), each rendered on February 1, 2024, as indicated in the Board's dismissal letters attached hereto as Exhibit A and Exhibit B. Exhibit A sets forth a listing of fifty (50) CIRP Group and Optional Group appeals, each of which was filed in a timely fashion to, and in compliance with the rules and policies of the PRRB.  As noted in the preamble to Exhibit A, that Dismissal Letter was regarding PRRB, "Case No, 24-0310G et al" and includes that group appeal, and forty-nine additional CIRP and Group appeals. Exhibit B sets forth a listing of thirteen (13) CIRP Group and Individual appeals, each of which was filed in a timely fashion to and in compliance with the rules and the procedures of the PRRB. As noted in the preamble to Exhibit B, that Dismissal Letter was regarding PRRB, "Case No. 24-0416GC et al" and includes that group appeal, and twelve additional CIRP Group and Individual appeals. The grounds and basis for this complaint are generally the same for all sixty-three (63) appeals that were timely filed in a fashion to and in compliance with the rules and

policies of the PRRB. Each such appeal was improperly and inappropriately dismissed by the Board and based upon a flimsy rationale of, "no determination", despite being timely filed.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 42. U.S.C. §1395oo(f) (appeal of a final Medicare program agency decision.)

4.      Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. §1391(e).

## PARTIES

5.      Each Plaintiff named herein, located in a variety of venues, counties and states as set forth more fully in the caption of this complaint, furnishes, or furnished during the relevant time periods pertinent to this complaint, inpatient and outpatient hospital services to, inter alia, patients entitled to benefits under the Medicare program. Each fiscal year that is applicable to each individually named hospital herein and its Medicare provider number along with the identity of each named hospital and the appeal group it participated in (which in turn indicates the fiscal year applicable to the appeal) is listed appropriately in Exhibit C.

Defendant, Xavier Becerra, Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program. Defendant Becerra is sued herein in his official governmental capacity.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

6.      The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. §1395c.  The Medicare program is federally funded and administered by the Secretary through CMS (formerly the Health Care

Financing Administration (HCFA)) and its contractors.  42 U.S.C. §1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

7.      CMS implements the Medicare program, in part, through the issuance of official Rulings. *See* 42 C.F.R. §401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretative rules implementing the Medicare program, which are compiled in one or more CMS Manuals.  The Secretary also issues other sub-regulatory documents to implement the Medicare program, which generally do not have the force and effect of law.

8.      The Medicare program is divided into five parts: A, B, C, D, and E.  Part A of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis.  42 U.S.C. §§1395c *et seq*.  Part A services are furnished to Medicare beneficiaries by "providers" of services, including the Hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. §1395cc, to furnish hospital services to Medicare beneficiaries.  This action involves only Part A of the Medicare program.

9.      CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" ("MACs"), which are agents of the Secretary.  Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. §1395h.  The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.

**THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM**

10.      Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Hospital Inpatient Prospective Payment System ("IPPS") to reimburse hospitals, including the Hospitals, for inpatient hospital operating costs.  Under IPPS, Medicare payments

for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. §1395ww(d)(5)(F).

## THE MEDICARE DSH ADJUSTMENT

11.   Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. §1395ww(d)(5)(F).

12.   The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and was made effective beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

13.   Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of these patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

14.   There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)). The Hospitals' DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" or "DPP." 42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

15.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days").   Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of such patients.

16.     The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to Supplemental Security Income (SSI) benefits, a federal low-income supplement.   The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter.

42 U.S.C. §1395ww(d)(5)(F)(vi)(I).   The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.   The Medicare Fraction is at issue in this case.

17.     The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under Part A of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II).  The Medicaid Fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] Part A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

### THE RELEVANT MEDICARE APPEALS PROCESS

18.    At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare.  42 C.F.R. §413.20.  Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year.  42 C.F.R. §405.1803.  In addition to including costs on its cost report, a hospital is also required to make a claim, or alternatively self-disallow, for any adjustment to its basic IPPS payment adjustment, such as the DSH adjustment.

19.    The Medicare Statute provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. §1395oo.   In addition, the statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination.  42 U.S.C. §1395oo(a)(1)(A)(ii), (a)(3).

20.     The regulations interpret the statutory requirements by stating that "the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination."   42 C.F.R. §405.1835(a)(3).

21.     In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure.

22.     The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.   42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.   Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

23.     A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. §1395oo(f).  The Secretary is the proper defendant in such an action.  *See* 42 C.F.R. §421.5(b).  Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. §1395oo(f).  Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

24.     In this case, on February 1, 2024, the PRRB dismissed the Hospitals' appeals on timeliness grounds. It ruled that the Hospitals' failed to appeal from a final determination and, that even if they had, they did not submit adequate documentation with their appeal.

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

25.     Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the Administrative Procedure Act (APA). Under the APA, a "reviewing court shall...hold unlawful and set aside agency action, findings, and conclusions found to be...arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Furthermore, a "reviewing court shall...hold unlawful and set aside agency action, findings, and conclusions found to be...in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2)(C).

26.     Additionally, a "reviewing court shall...hold unlawful and set aside agency action, findings, and conclusions found to be...without observance of procedure required by law." 5 U.S.C. §706(2)(D). The APA dictates rulemaking procedural requirements, specifically the requirement that the agency provides notice of proposed rulemaking, that the agency affords interested parties an opportunity to comment on the proposed rulemaking, and that the agency considers the relevant matters presented. 5 U.S.C. § 553.

## THE DISFAVOR OF RETROACTIVE RULEMAKING AND THE MEDICARE STATUTE'S LIMITED GRANT OF AUTHORITY FOR SUCH RULEMAKING

27.     Retroactive rulemaking is disfavored in the law, and unless provided expressly, statutes granting administrative agencies the authority to engage in rulemaking should be construed as extending that authority prospectively only. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

28.      In *Georgetown University Hospital,* the Supreme Court held that CMS could not exercise its rulemaking authority to issue regulations limiting Medicare reimbursement retroactively. 488 U.S. at 215. In reaching that conclusion, the Supreme Court observed that "[r]etroactivity is not favored in the law," and that "congressional enactments and administrative rules will *not* be construed to have retroactive effect unless their language *requires* this result." *Id.* at 208 (emphases added). The Court added that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.*

29.      Following *Georgetown*, Congress amended the Medicare Statute to authorize the Secretary to engage in retroactive rulemaking only where such rulemaking is required by statute or is in the public interest.  42 U.S.C. 1395hh(e)(1)(A)(i) and (ii).

### THE 2004 FINAL RULE, *NORTHEAST HOSPITAL*, THE *ALLINA* LITIGATION AND THE PART C DAYS RETROACTIVE FINAL RULE

30.      In a 2003 proposed rule, the Secretary proposed to clarify that "part C days." i.e., inpatient days during a stay for which Medicare Part C was the payor, should be excluded from Medicare Fraction.  68 *Fed. Reg.* 27154, 27208 (May 19, 2003).

31.      However, in a 2004 final rule, the Secretary did an about face and adopted the policy in which Part C days are included in the Medicare Fraction.  69 *Fed. Reg.* 48916, 49099 (Aug. 11, 2004) (emphasis added).

32.      In *Northeast Hospital Corp. v. Sebelius*, 657 F.3d 1, 13 (D.C. Cir. 2011), hospitals challenged the 2004 final rule, arguing that it was an impermissible interpretation of the statute and that it could not be retroactively applied to the fiscal years 1999 through 2002. Employing the familiar Chevron two-step analysis, the D.C. Circuit held that, under step one, the Medicare

statute did not unambiguously foreclose the Secretary's interpretation of the statute. The Court did not, however, reach the question whether the Secretary's interpretation was reasonable under step two. Instead, it held that, even if the Secretary's interpretation was reasonable, that interpretation could not be applied retroactively to the years at issue in the case because, prior to issuing the rule, the Secretary had a settled practice of not counting the Part C days in the Medicare fraction. *Id.* at 17.

33.     In the round of litigation known as *Allina I*, hospitals challenged the 2004 rule, as procedurally and substantively invalid. The district vacated the 2004 final rule on the basis that it 1) provided inadequate opportunity for notice and comment in violation of the APA and the Medicare Act; (2) failed to explain the reasons behind the policy change, in violation of the APA. *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 87 (D.D.C. 2012). The D.C. Circuit affirmed. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014). It held that the 2004 final rule was procedurally invalid and did not reach the issue of whether the rule was arbitrary and capricious for failing to adequately explain the about face between the proposed and final policy. *Id.* at 1111. The Court did not affirm the district court's direction to the Secretary to recalculate the plaintiff hospital's Medicare Fraction without inclusion of Part C days. Instead, the Court remanded the action to the district court, noting that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court." *Id.* at 1111.

34.     The *Allina II* litigation began following CMS's 2014 publication of the Medicare Part A/SSI fractions for FFY 2012, including Part C days for all hospitals in the country. CMS proceeded without notice or comment or explanation. When sued, the Secretary defended on the basis that notice and comment procedure was not necessary because there was no rule, but even if

there were a rule, such rule was interpretive at most. The district court granted summary judgment

to the government. *Allina Health Servs. v. Burwell*, 201 F. Supp. 3d 94 (D.D.C. 2016). The court

concluded that HHS's interpretation of the relevant statutory provisions was a permissible one.

*Id.* at 106-109. The court also determined that the Social Security Act's rulemaking provisions,

42 U.S.C. § 1395hh, did not require notice-and-comment rulemaking because the provision does

not apply to "interpretive rules" and because CMS's "interpretation of the DSH statute is not a

'rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal

standard.'" *Id.* at 104-105.

35.     The court of appeals reversed and remanded. *Allina Health Services v. Price*, 863

F.3d 937 (D.C. Cir. 2017). The court concluded that CMS's inclusion of Medicare Part C days in

its calculation of the FY2012 Medicare fractions was a "requirement" and a "substantive legal

standard" under 42 U.S.C. § 1395hh. *Id.* at 943- 944. The court additionally held that, unlike the

APA, section 1395hh does not provide an exception for "interpretive rules.". The court further

concluded that because it had vacated the 2004 final rule on the ground that it was not the logical

outgrowth of the proposed rule, a separate provision of the Medicare Act (42 U.S.C. §

1395hh(a)(4)) prevented the agency from determining the appropriate Medicare fraction "by way

of adjudication" until the agency had completed notice-and-comment rulemaking. *Id.* at 945.

36.     On June 3, 2019, after granting certiorari, the Supreme Court affirmed the Court

of Appeals' ruling in *Allina II* as to the notice-and-comment requirement under 42 U.S.C.

        § 1395hh(a)(2).   *Azar v. Allina Health Services,* 587 U.S. ___, 139 S. Ct. 1804 (2019).

The Supreme Court held that the agency's 2014 application of the 2004 Part C days policy

was "at least" a statement of policy that changed or established a substantive legal standard

governing payment for services, and thus required notice-and-comment rulemaking under section

1395hh(a)(2) of the Medicare statute. *Id.* at 1810–14. The Court emphasized that "the public had a right to notice and comment *before* the government could adopt the policy at hand." *Id.* at 1811 (citation omitted and emphasis added). The Court also explained that the inclusion of part C days in the Medicare fraction "makes the fraction smaller and reduces hospitals' payments considerably—by between $3 and $4 billion over a 9-year period, according to the government." *Id.* at 1809. The Court further opined that the government "might have sought to argue," but in fact did not contend, that "the *statute* itself required it to count Part C patients in the Medicare fraction" and instead "has insisted that the statute 'does not speak directly to the issue,' and thus leaves a 'gap' for the agency to fill." *Id.* at 1816–17 (citations omitted). In addition, the Supreme Court did not disturb the Court of Appeals' ruling that the readopted 2004 policy is also invalid under 42 U.S.C. § 1395hh(a)(4) because the agency failed to engage in notice-and-comment rulemaking following the logical outgrowth failure of its vacated 2004 rule before making the policy take effect, *id.* at 1816, or "legally operative," *Allina II*, 863 F.3d at 945.

37.     On August 6, 2020, CMS published a notice of proposed rulemaking, proposing to adopt retroactively for periods prior to October 1, 2013 (and even prior to the vacated 2004 rule) the same Part C policy change as that previously adopted in 2004 final rule. 85 *Fed. Reg.* 47,723. (For discharges on or after October1, 2013, Part C days are included in the Medicare Fraction per a final rule that was adopted after notice and comment rulemaking. 78 *Fed. Reg.* 50496. That rule is not challenged here.)

38.     The proposed rule claimed that, due to the vacatur of the 2004 rule, the agency has no rule governing the treatment of Part C days and must, under the Supreme Court's opinion in *Allina II* requiring notice-and-comment rulemaking, engage in retroactive rulemaking. 85 *Fed. Reg. d.* at 47,724–25. However, the Supreme Court issued no such directive.

39.     The proposed rule claimed two grounds for its use of retroactive rulemaking: first, it claimed that retroactive rulemaking is necessary to establish a standard to comply with the statutory requirement to calculate Medicare DSH payments, and second, it claimed that retroactive rulemaking is in the "public interest" because, absent retroactive rulemaking, the agency "would be unable to calculate and confirm proper DSH payments for the time periods before [F]FY 2014." 85 Fed. Reg. at 47,725.

40.     On June 9, 2023, CMS issued a final rule (the "Part C Days Retroactive Rule), in which it finalized its proposal to place -- retroactively, for all periods prior to October 1, 2013 -- Part C days in the Medicare Fraction. 88 *Fed. Reg.* 37,772, 37,786. In the final rule, CMS claims that its interpretation of the DSH statute as to Part C days is statutorily required following the Supreme Court's decision on a different category of days in *Becerra v. Empire Health Foundation*, 142 S. Ct. 2354, 1368. 88 *Fed. Reg.* at 37,775. CMS also claimed,  in the alternative, that retroactive rulemaking is necessary and proper to comply with the Supreme Court's decision in *Allina II* and "to establish" the Part C standard for cost years before October 1, 2013. *Id.* at 37,776. CMS also asserted that, consistent with 42 U.S.C. § 1395hh(e)(1) (A)(i) and (ii), retroactive rulemaking is permissible because it is required by statute and also is permissible because it is in the public interest. 88 *Fed. Reg.* at 37,773.

41.     All of the justifications in the Part C Days Final Rule for retroactive rulemaking are unsupported by the Supreme Court decisions in *Allina* and *Empire Health,* contrary to the Medicare Statute, and otherwise contrary to law and public policy.

42.     It is undisputed that the PRRB does not have the authority to rule on the validity of the Part C Days Final Rule. *See* 42 C.F.R. §405.1867. Litigation on the policy in the 2004 final rule, including the Secretary's attempt to impose that policy retroactively, has now exceeded 16

years.  Remanding this case to the PRRB could further delay proper Medicare payments to the Plaintiffs by years.  Therefore, should the Court reverse the PRRB's dismissal of the Plaintiffs' appeals, it is appropriate for the Court to assume jurisdiction over the Plaintiffs' challenge to the Part C Days Final Rule.

## Count I

### Judicial Review Under the Medicare Act and the APA
### (The PRRB's Dismissal Actions are Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

43.     Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint.

44.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," *id.* §706(2)(E).

45.     The PRRB's dismissal of the Hospitals' appeal was  arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review under the Medicare Act and the APA
### (The Part C Days Final Rule is Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

46.     Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," id. §706(2)(E).

47.     The Part C Days Final Rule is  arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act and Supreme Court law.

## REQUEST FOR RELIEF

WHEREFORE, the Hospitals respectfully request that this Court enter an order:

a.    Reversing the PRRB's dismissal of the Plaintiffs' appeals.

b.    Vacating the Part C Days Final Rule.

c.    Ordering the Secretary to calculate the Medicare Fractions of the Plaintiffs without including Part C Days in such Fractions.

c.    For Plaintiffs' costs and reasonable attorney's fees, and for interest and such other and further relief that the Court deems appropriate.

Dated: September 9, 2024                    Respectfully submitted,


/s/Alan J. Sedley
ALAN J. SEDLEY, APLC (Bar No. OH0017)
18880 Douglas, Suite 417
Irvine, CA 92612
(818) 601-0098
asedley@sedleyhealthlaw.com


Attorneys for Plaintiffs